IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:13-831-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| JASON M. WILLIAMS | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 163). The defendant contends that his medical conditions of hypertension, obesity, and a history of seizures, coupled with the ongoing COVID-19 pandemic, constitute extraordinary and compelling reasons for consideration of his release.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

(4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a

request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government concedes that the defendant has exhausted his administrative remedies. Thus, the court will proceed to review the matter on the merits.

DISCUSSION

I. *The Defendant's Medical Condition*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States*

5

*v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

According to the CDC, a person with hypertension and obesity, with a Body Mass Index (BMI) greater than 25 "might" have an increased risk of illness from COVID-19. A person who experiences seizures is not included on the CDC's list.

The government strenuously argues that the defendant has not shown an extraordinary and compelling reason for his release based upon his medical conditions. This court respectfully disagrees. Although it is a close question, the court will assume that the defendant's current medical conditions, in light of the ongoing COVID-19 pandemic, constitute an extraordinary and compelling reason for consideration of his release.

But the court's inquiry does not end here. This court must now turn to an individualized assessment of the defendant's situation, with particular emphasis on the §3553(a) sentencing factors, the defendant's post-sentencing behavior, and other relevant information.

*Factors Under § 3553(a)*

1. *Nature and Circumstances of the Offense*. The investigation revealed that the defendant participated in several controlled purchases of marijuana made by Alcohol, Tobacco, and Firearm (ATF) agents in 2013. In addition, the defendant sold a .380 caliber Hi-Point model pistol to a confidential informant on March 15, 2013. Following another controlled drug purchase from the defendant, law enforcement arrested the defendant and found him in possession of a .40 caliber Ruger pistol, a large amount of cash, and a quantity

of marijuana. Law enforcement found two additional .380 caliber pistols at the defendant's residence, one of which was loaded, and another large amount of marijuana in a bedroom. The defendant's wife admitted that she had purchased at least two of the weapons found by law enforcement.

In September 2013, the defendant was one of two defendants charged in a 9-Count Indictment. The defendant was named in the following Counts:

Count 1:     Conspiracy to possess with intent to distribute and distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(D), and 846;

Count 2:     Possession with intent to distribute and distribute a quantity of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(D);

Counts 3,8:  Knowingly using and carrying a firearm during and relation to, and did possess a firearm, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c);

Counts 4,9:  Having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting commerce, a firearm and ammunition, that is a .380 caliber Hi-Point Model CF 380 and .380 caliber ammunition, all of which had been shipped and transported in interstate and foreign commerce; in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e);

Count 5:     Making false statements to a federally licensed firearms dealer, in violation of U.S.C §§ 922(a)(6), 924(a)(2), and 2; and

Counts 6,7:  With Sokilia Jaquita Mosby-Williams, principals, aiders and abettors and as coparticipants in jointly undertaken criminal activity, knowingly, possess with intent to distribute a quantity of marijuana, a Schedule I controlled substance; in violation of 18 U.S.C §2 and 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(D).

In November 2014, in accordance with the terms of a written plea agreement (ECF No.116) the defendant pleaded guilty to Count 4 above. The remaining Counts were dismissed at sentencing.

A Presentence Report (PSR) (ECF No. 116) was prepared and calculated the defendant's total offense level at 34. His criminal history category was VI. This yielded an advisory sentencing Guideline range of 262 to 327 months incarceration. After overruling several objections filed by the defendant, this court sentenced the defendant on April 1, 2015 to a 262-month term of incarceration—the low end of the Guideline range.

2. *History and Characteristics of the Defendant*. The defendant had a very dysfunctional childhood, during which time his mother spent several years in prison for drug convictions. He grew up without any stability in his life and ran away frequently when he was sent to live with a relative. The defendant had behavioral problems in school and domestic violence incidents with his first wife. Despite not getting a divorce from his first wife, he later "married" two other women after his first marriage. The defendant has three minor children from different relationships.

While in the Lexington County Detention Center, the defendant and a staff nurse had an inappropriate sexual relationship, which resulted in the nurse being fired from her job.

Additionally, the defendant has a significant history of medical problems related to his physical health, as well as mental health problems, and an extensive history of drug use dating back to age 8.

The defendant completed the 11th grade in high school. He has prior employment as a laborer in the construction industry.

While the defendant was in pretrial detention awaiting sentencing in this case, the correctional authorities found two pieces of metal in the defendant's cell and determined that the defendant chased another detainee with what appeared to be pieces of metal. He was thus charged with possession of contraband and a weapon.[2] He also admitted placing jelly on his fingers prior to having his blood sugar tested to cause a false high reading so that he could obtain extra food while in pretrial detention.

The defendant's criminal convictions span 11 pages of the PSR and include a time frame from 1995 (when the defendant was age 17) to 2021 (when the defendant was 34). The criminal convictions itemized in the PSR resulted in a sub-total criminal history score of 18. Because a maximum of 4 points was counted under U.S.S.G. § 4A1.1(c), the defendant's criminal history subtotal was then determined to be 14. A score of 14 results in a criminal history category of VI.

The defendant was also determined to be an armed career offender which would have automatically made the defendant a criminal history category VI. Thus, even if the defendant's armed career offender penalty was no longer valid due to intervening changes in sentencing law, the fact remains that his criminal history category would still be VI if he were sentenced today.

---

[2] Because of this behavior while in pretrial custody, the defendant did not receive a reduction for acceptance of responsibility when the Guidelines were calculated.

*Post-Sentencing Conduct*

The defendant is 44 years old. He has served approximately 41% of the 262-month sentence imposed by this court. His expected release date is August 2032 and he is housed currently at Williamsburg FCI.

The defendant's behavior while incarcerated with the BOP is not exemplary. He has 6 disciplinary incidents on his record, including refusing to obey an order and interfering with staff, lying or falsifying a statement, being in an unauthorized area, possessing stolen property, phone abuse, possessing an unauthorized item while incarcerated, and another charge of phone abuse.

The defendant has taken a total of 22 vocational and educational courses while incarcerated. Some of these courses are obviously of substantial rehabilitative value such as nutrition, healthy marriage, parenting, stress management, anger management, incorporating a business, and drug education. He has also enrolled in a GED class.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct.* The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity.* Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

## CONCLUSION

On this record, the court concludes that the § 3553(a) factors, coupled with the defendant's post-sentencing conduct, compel the conclusion that the defendant's immediate release is not appropriate in this case. On multiple occasions, the defendant, a convicted felon, was in possession of firearms. He also possessed and trafficked large amounts of marijuana and there was evidence that on several occasions he possessed firearms while distributing marijuana to a confidential informant. The fact that the defendant carried guns with him while involved in trafficking large amounts of marijuana is presumptively dangerous.

While the defendant was in pretrial detention, he attacked another inmate with a piece of metal that was captured on video cameras. He also had a sexual relationship with one of the Detention Center nurses.

The defendant's release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion (ECF No. 163) is respectfully denied.

IT IS SO ORDERED.

August 23, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge